UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSE JESUS GUIO PALACIO

Petitioner,

v.

WARDEN *of the Metropolitan Detention Center*; FIELD OFFICE DIRECTOR*, New York City Field Office, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*,

Respondents.

**TEMPORARY RESTRAINING ORDER**
26-CV-7351 (NRM)

**NINA R. MORRISON**, United States District Judge:

Petitioner Jose Jesus Guio Palacio is a Venezuelan national who entered the United States on November 19, 2015, and has continually resided here since that time. Petition, ECF No. 2, at 1–2 (the "Pet."). He was arrested on October 13, 2026, by Immigration and Customs Enforcement ("ICE"), and has remained in ICE custody after a car stop by the Florida Highway Patrol. Response, ECF No. 7, at 1–2.

On October 26, 2026, Petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *Id.* at 2. While detained at the MDC, Petitioner filed the instant Emergency Petition for Writ of Habeas Corpus through counsel. ECF No. 1. Petitioner alleges that his detention violates his constitutional and statutory rights and ask this Court to issue a Writ of Habeas Corpus or to issue a temporary restraining order directing his release. Pet. ¶ 33; *id.* at 15–16.

## BACKGROUND

As both parties set forth, Petitioner entered the country on November 29, 2015, on a B-2 visitor visa. Pet. ¶ 9, Response at 1. Respondents assert that this visa allowed Petitioner to remain in the country for a period not to exceed May 28, 2016. Response at 1. Then, in May of 2016, Petitioner filed an application for relief from removal, although the parties dispute the exact date the application was filed. *Id.*; Pet. ¶ 11. As Petitioner asserts, part of that asylum application sought relief under the Convention Against Torture, and in 2021, Petitioner was granted Temporary Protected Status as a citizen of Venezuela. Pet. ¶ 11.

Petitioner has averred, and Respondents have not disputed, that his only criminal history consists of a single charge of Driving Under the Influence on December 9, 2016, that resulted in his successful completion of a pretrial diversion program and entry by the State Attorney of *nolle prosequi*. Pet. ¶ 36.

As Respondents set forth, on October 13, 2026, Petitioner was stopped by Florida Highway Patrol while driving his car. Response at 1. He was arrested pursuant to a Form I-200 Warrant. *Id.* Thereafter, Respondents transported Petitioner to a holding facility in Tampa, Florida. *Id.*

Respondents assert that later that same day, ICE conducted an individualized custody determination pursuant to 8 U.S.C. § 1226(a) and determined that Petitioner should continue to be detained. *Id.* ICE then served Petitioner with a Form I-286, Notice of Custody Determination, and a Form I-862, Notice to Appear, charging Petitioner with removability under § 237(a)(1)(B) of the Immigration and Nationality

Act ("INA"). *Id.* It was after this that Petitioner was transferred to "multiple holding facilities" in Florida until ultimately, on October 26, he was transferred to the MDC in Brooklyn, New York. *Id.* at 2.

On November 4, 2026, Petitioner appeared before an Immigration Judge ("IJ"), who denied bond after making a finding that Petitioner failed to establish that he was not a flight risk. *Id.* On November 16, 2026, the IJ sustained Petitioner's charges and found him removable. *Id.* Petitioner's next immigration court appearance is scheduled for December 2, 2026. *Id.* He reserved his right to appeal the IJ's denial of bond, and that appeal is due on December 4, 2026. Pet. at 2.

After Petitioner was transferred to the MDC, he initiated this action on November 13, 2026, and the case was assigned to the undersigned the same day. The next day, this Court issued an Order to Show Cause ("OTSC"), ECF No. 4, directing Respondents to file, by 12:00 P.M. on November 17, 2026, a submission (1) providing certain information about Petitioner and his circumstances, (2) indicating the statutory provision(s) under which they assert the authority to detain Petitioner, and (3) addressing whether there is any basis to distinguish the asserted grounds for detention from, *inter alia,* this Court's decision in *H.A.C.F. v. Francis*, No. 26-CV-872 (NRM), 2026 WL 482607 (E.D.N.Y. Feb. 20, 2026), *amended on reconsideration in part*, 2026 WL 861152 (E.D.N.Y. Mar. 30, 2026). The Court further directed that, if Respondents asserted no basis to distinguish this Petition from *H.A.C.F.*, the submission could take the form of a letter so stating, and indicating whether Respondents continue to oppose issuance of the writ, subject to preservation of

Respondents' arguments for appeal. *Id.* at 3.

Respondents timely filed a two-page letter response on November 17, 2026. ECF No. 7. However, Respondents failed to provide even certain basic information required by the Court's OTSC, including "Petitioner's A-number," "a contact person who can facilitate counsel's access to Petitioner," "a copy of the final order of removal for this Petitioner," and "any other documentation or exhibits regarding the procedure posture of any pending Department of Homeland Security or Executive Office for immigration Review proceedings concerning this Petitioner." *See* Response; OTSC at 2, 5.

Nor did Respondents take the position, in their Response, that Petitioner's detention is lawful, much less explain why that is the case. Instead, Respondents merely summarized the claims brought in the Petition and complied with the portion of this Court's order directing them to outline Petitioner's detention history. Response at 1–2. However, Respondents proceeded to acknowledge that Respondents "cannot show that an individualized custody determination was conducted for Petitioner prior to his detention." *Id.* at 2. Respondents thus conceded that Petitioner's case is not distinguishable from this Court's earlier decision in *H.A.C.F.*, and that if this Court adheres to its earlier reasoning in that case, the same outcome follows. OTSC at 2–3. Respondents noted their continued respectful disagreement with *H.A.C.F.,* that some courts in this district have taken a contrary approach, and reserved their right to appeal. Response at 2.

## DISCUSSION

Upon review of the Petition, as well as Respondents' submission conceding that Petitioner did not receive an individualized custody determination based on his risk of flight or dangerousness before detention, the Court finds that Petitioner has sufficiently demonstrated that he is likely to succeed on the merits of his claim that his detention was unlawful, and that he would suffer irreparable harm if temporary relief was not granted. For those reasons and the reasons that follow, the Court hereby issues a **TEMPORARY RESTRAINING ORDER** directing Respondents to release Petitioner from custody and enjoining Respondents from re-detaining Petitioner while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

Under Second Circuit law, the standard for entry of a TRO is the same as that for a preliminary injunction: the movant must establish "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation modified); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019). Where "the government is a party to the suit" the Court's inquiry into the public interest and the balance of the equities "merge." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020).

The Court here finds that Petitioner is likely to succeed on the merits of his claim that his detention violated his constitutional and statutory rights. As this Court and many others have held, § 1226(a)'s implementing regulations require "an individualized determination as to whether the detention of a noncitizen is appropriate" *prior* to detention. *H.A.C.F.*, 2026 WL 861152, at *2 (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)); *see, e.g.*, *Grance v. Maldonado*, No. 26-CV-3346 (AMD), 2026 WL 1815931, at *4 (E.D.N.Y. June 24, 2026); *E.A.C.F. v. Areta*, No. 26-CV-03047 (MMG), 2026 WL 1213414, at *3 (S.D.N.Y. May 4, 2026); *Goorakanis v. Lyons*, No. 29-CV-9456 (DEH), 2025 WL 362896, at *11 (S.D.N.Y. Dec. 15, 2025); *Gopie v. Lyons*, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). Respondents concede that no individualized custody determination was conducted for Petitioner prior to his detention. Response at 2.

As noted above, in their initial response to the OTSC, Respondents do not actually state that Petitioner's continued detention is lawful. Nor do they cite any statutory provision(s) to justify his present detention. Construing their submission liberally, since Respondents generally take the position that this case is indistinguishable from this Court's earlier decision in *H.A.C.F.*, Respondents appear to argue that detention here is lawful under § 1226(a) because Petitioner was provided with a *post*-deprivation custody determination by ICE, and may also be justified by the fact that he appeared before an IJ for a bond hearing on November 4, 2026, three weeks after he was first detained. Response at 1–2. However, as this Court made clear in *H.A.C.F.* and *Hyppolite*, § 1226(a) and the Due Process Clause

require that noncitizens be given notice and a bond hearing *prior* to detention. *See H.A.C.F.*, 2026 WL 861152, at *2; *Hyppolite*, 808 F. Supp. 3d at 491–95. Given that neither the Second Circuit nor the United States Supreme Court has yet to address this precise question, the Court adheres to the reasoning of its earlier decisions and the conclusion reached by many other courts in this circuit. *See, e.g.*, *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (holding that a "custody redetermination hearing" is "no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause" (internal quotation omitted)); *Tumba v. Francis*, 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025) (noting that "the Government's violation of Petitioner's constitutional rights originated with her detention in the first instance," and that "a [post-deprivation] bond hearing could not cure that constitutional violation"); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 318 (E.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494–95 (S.D.N.Y. 2025); *Singh v. Maldonado*, No. 26-CV-19 (OEM), 2026 WL 233216, at *8–10 (E.D.N.Y. Jan. 29, 2026); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 405 (E.D.N.Y. 2025); *Sidqui v. Almodovar*, No. 25-CV-9349 (VSB), 2026 WL 251929, at *17 (S.D.N.Y. Jan. 30, 2026).

Similarly, the Court finds that the mandatory detention provisions of 8 U.S.C. §§ 1225(a)(1) and (b)(2) are inapplicable here because Petitioner has been living continuously in the United States and is not "seeking admission" under § 1225(b)(2). *See Barbosa de Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026) ("Section 1225(b)(2)

therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization.").

The Court hereby incorporates by reference its earlier analysis of these issues in *H.A.C.F.*, 2026 WL 861152, at *2–3, and *Hyppolite*, 808 F. Supp. 3d at 486–95. Thus, on this ground alone, the Court finds that, on the present record, Petitioner is likely to succeed on the merits of his claim that Respondents violated his constitutional and statutory rights, and that his detention is therefore unlawful.

Nor does the fact that Petitioner received a bond hearing before an Immigration Judge three weeks into his detention defeat his likelihood of success on the merits. In *Velasco Lopez v. Decker*, the Court found that detention under § 1226(a) entitled the petitioner in that case to an additional, burden-shifting bond hearing at which the government would be required to prove by clear and convincing evidence that the petitioner was a danger to the community or a flight risk. 978 F.3d 842, 855–56 (2d Cir. 2020). Here, Petitioner alleges that the IJ denied bond only after applying a different standard—placing the burden on Petitioner to prove that he was not a flight risk and was entitled to bond. Pet. ¶¶ 31, 39. As *Velasco Lopez* makes clear, due process requires that the government be held to a far more demanding burden of proof given the liberty interests at stake for a § 1226(a) detainee. 978 F.3d at 856. In so holding, the Second Circuit underscored that "there [is] a considerable risk of error" in a bond hearing that places the burden on a petitioner to justify his release. *Id.* at 851. The Court emphasized that "the private interest affected by the

official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* The Court also recognized that a burden-shifted bond hearing can "mitigate[] the risk of error" where a petitioner is "neither a flight risk nor a danger to the community but [is] unable to prove that [is] the case"—specifically because the government has "substantial resources" it is able to deploy to aid a bond determination. *See id.* at 853–54. Simply put, "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* at 854.

It is true that the *Velasco Lopez* Court observed that the case before it did not "require" it "to establish a bright line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden" because the Court had no difficulty finding that "[o]n any calculus, Velasco Lopez's fifteen month incarceration [without such a hearing] . . . violated due process." *Id.* at 855 n.13. But nothing in the Court's analysis of the relevant constitutional and statutory principles as applied to § 1226(a) detainees indicated that a person similarly situated to Petitioner here—*i.e.,* a non-citizen who has virtually no criminal history (a single DUI that was dismissed upon his successful completion of a pretrial diversion program), who was not in removal proceedings at the time of his arrest, who received neither notice nor an opportunity to be heard before a neutral magistrate prior to being detained, and has now been in custody for over a month—is not entitled to similar procedural safeguards.

Here, Respondents have also not disputed Petitioner's claim that the IJ applied an incorrect standard at the November 4 bond hearing, in violation of *Velasco Lopez* and § 1226(a). Nor did Respondents attach a copy of the bond hearing transcript to their submission. Thus, to the extent Respondents' letter may be (generously) read to argue that the bond hearing Petitioner received before the IJ after three weeks in detention renders his present detention lawful, they are unlikely to succeed on that claim.

Accordingly, the Court finds that, on the present record, Petitioner has sufficiently shown a likelihood of success on the merits of his claim that his detention violates his constitutional and statutory rights.

The Court further finds a strong likelihood of irreparable harm if Petitioner is not released from his current detention. "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *8 (E.D.N.Y. Dec. 22, 2025) (quoting *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)). Additionally, Petitioner asserts that his detention violates his constitutional rights. Pet. ¶¶ 59–67. The constitutional aspect of his claims increases the likelihood that he faces irreparable harm if not released from his current detention. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for the . . . conclusion that the plaintiff would suffer

irreparable harm in the absence of preliminary injunctive relief").

Finally, the Court has weighed the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which sets forth the test that courts in the Second Circuit apply when determining "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25-CV-6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sep. 12, 2025). Having considered (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in favor of Petitioner's immediate release from detention. *See Cedeno Carreno v. Bondi*, No. 26-CV-1180 (NJC), 2026 WL 2969839, at *2 (E.D.N.Y. Oct. 2, 2026) (detention "without any pre-deprivation notice or opportunity to be heard infringes on 'the most significant liberty interest there is—the interest in being free from imprisonment.'" (quoting *Velasco Lopez*, 978 F.3d at 851)). The Court likewise finds that this Temporary Restraining Order furthers the public's interest. *Iza*, 2025 WL 3712274, at *8 ("Freedom from unlawful detention is undoubtedly within the public's interest.").

It is hereby:

**ORDERED**, that Respondents must release Petitioner from custody no later than **11:00 A.M. on Wednesday, November 18, 2026**. Respondents, through counsel, shall file a letter on the docket no later than **2:00 P.M. on November 18,**

**2026**, confirming Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

In light of this Temporary Restraining Order, the parties shall make submissions in accordance with the following: Respondents shall show cause in writing no later than **11:00 A.M. on November 23, 2026**, as to why the Petition for a writ of habeas corpus should not be granted.

Specifically, in their complete response to the Petition, Respondents shall: (1) include all omitted information and documentation that they were previously directed to provide in the Court's OTSC, particularly as detailed in sub-paragraphs 1, 7, and 8, *see* OTSC at 2, 5; (2) state the specific statutory and legal grounds that they submit justify Petitioner's initial detention and his present detention; (3) address any other reason why Petitioner is not entitled to habeas relief, in light of *Velasco Lopez*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), and the particular factual circumstances and procedural history in this case.

Respondents shall separately file as one combined exhibit, under seal, (a) all documents reflecting the nature of the initial custody determination they assert was made by ICE on the day Petitioner was detained, including the names and titles of all persons involved in that determination; (b) all documents in their possession

concerning the proceedings before the IJ on November 4, 2026; (c) a transcript of the November 4, 2026 bond hearing; (d) all documents in their possession concerning the proceedings before the IJ on November 16, 2026; and (e) a transcript of the November 16, 2026 hearing before the IJ.

Petitioner shall file a reply, if any, on or before **5:00 PM on November 30, 2026**.

In light of the current status of Petitioner's other legal proceedings, including his reservation of his right to appeal of the IJ's denial of bond, **the parties may confer and advise the Court if they consent to convert this TRO into a preliminary injunction, which will suspend the briefing schedule outlined above** until the Court confers with the parties on a schedule for further proceedings, if any. Should the parties consent, they shall file a letter on or before **5:00 PM on November 22, 2026** with a proposed alternative briefing schedule on the merits of the Petition.

The foregoing **Temporary Restraining Order** shall expire on **December 1, 2026 at 7:00 P.M.** unless it is extended by further Order of this Court for good cause shown or otherwise. *See* Fed. R. Civ. P. 65(b)(2).

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: November 17, 2026 at 9:00 P.M.
Brooklyn, New York